## No. 7712.

### CHARLES LANGE VS. MRS. A. B. BARANCO.

Although the Defendant has not appealed from the judgment dismissing his Reconventional demand, he may, in his Answer to Plaintiff's Appeal, pray that the judgment of the lower Court be so amended as to recognize and enforce his said claim in Reconvention. This Court will, in that case, revise the judgment of the lower Court also on the point of Defendant's Reconvention.

A market-house though not belonging to the owner of the soil upon which it is built, is itself immovable property, and a suit by Injunction to prevent Defendant from disturbing Plaintiff in the enjoyment of said market-house and its revenues, and from slandering his title thereto, is a *possessory* action.

The only legal inquiry in the possessory action is: was the Plaintiff the actual possessor, as alleged, and did the Defendant disturb him? And plaintiff needs only show possession for a year and a day.

On the Rehearing.—The evidence showing in this case that Defendant was not actuated by malice in slandering Plaintiff's title, *held* that the payment of the costs of court, which are considerable, will be a sufficient penalty, without the infliction of damages.

APPEAL from the Third District Court, parish of Orleans. *Monroe,* J.

Braughn, Buck & Dinkelspiel, and E. J. Wenck for Plaintiff and Appellant:

Defendant not having appealed from the judgment dismissing her Reconventional Demand, cannot by her Answer to the Appeal have that part of the case revised by this Court.

Plaintiff sues as owner to be quieted in his possession. All he has to do, is to show his title, and to prove possession and disturbance, which he has done.

If the alleged simulation were proved by Defendant, still the suit should be maintained, because Defendant has shown no title, and simulation may be lawful.   17 La. 128 ; 15 An. 547 ; 20 An. 172 ; 11 An. 168.

There is no simulation of Plaintiff's title, and none has been proved.

This suit is technically an "action of slander of title." Defendant by her Answer became *plaintiff in a petitory action*, and assumed the burden of proving in herself a title superior to that of the *possessor*. 14 La. 849 ; 1 La. 102 ; 11 An. 174.

McGloin & Nixon for Defendant and Appellee :

Defendant's Demand in Reconvention is, as well as the rest of the judgment appealed from, before this Court for revision.   C. P. 592; 30 An. 803.

This is not a *possessory* action, as contended, inasmuch as the property in controversy is not *real* but movable. It is the rents and revenues of the Market-house which are the object of this litigation.   3 Rob. 518 ; 5 An. 585 ; C. P. 46, 41, 6, 4, and 49.

If the property were *real*, this suit would be one in *jactitation of title*, and Defendant can show and maintain her title.   27 An. 308 ; 11 La. 186.

We have pleaded fraud and *simulation*, and need not resort to the Revocatory action.   11 An. 169 ; 5 An. 1 ; 12 An. 173 ; 10 An. 570 ; 6 An. 710 ; 5 An. 668, and others.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J.   Under the main, substantial averment that he is the actual legal possessor of the "Washington Market-House" in this city, and that the defendant disturbs him, without any legitimate authority, in the enjoyment of the same and of the revenues yielded thereby, the plaintiff applied for an injunction to restrain the defendant from further molesting him, and prayed to be quieted in the fruition of his rights, and that the defendant be mulcted in damages for slandering his title and disturbing him.

The answer admits the disturbance, charges the nullity of plaintiff's title, as tainted with fraud and simulation, and asserts title in the defendant to the market-house and to its income.

A mass of evidence was received, with and without objection, in the lower court, which might very properly have been dispensed with, on both sides, as the taking of it has consumed much public time, encumbers the record, inflicts upon the courts, lower and appellate, the burden of considering irrelevant testimony, and imposes upon the party litigant to be finally cast onerous expense, uselessly incurred.

The judgment rendered below dissolved the injunction and dis-

missed both plaintiff's petition and defendant's reconventional demand,. without any reserve of rights.

From this judgment the plaintiff has alone appealed, but in her answer here the defendant, considering that she also had cause to complain, stated the points on which she thought she had sustained wrong and injury, and prayed that the judgment be amended so as to recognize and enforce her demand in reconvention, with a reserve of her right to sue in damages, on account of the wrongful issuance of the injunction.

The plaintiff objects to the trial of the case here as regards the reconventional demand, on the ground that the defendant did not appeal from the judgment dismissing that demand.

It was unnecessary that she should do so. A judgment is the solemn adjudication of a court, established by law, made in a suit upon the relative claims of parties thereto, as disclosed by the record, and which passes on the matters so presented for determination. When it decides the issues submitted, it is an entirety, and, strictly, is *indivisible;* not so, however, as to compel a party who is only partly benefited to appeal from the judgment in his behalf. It may be rendered partly in favor of or against a litigant, and partly in favor of or against others. The party who appeals, whoever he be, theoretically brings up the entire judgment for revision to the appellate court; *absolutely*, as far as it aggrieves him, and *conditionally* as it affects others who are the appellees, and who can ask that the judgment, as to them, be re-examined and reformed. The Code of Practice, art. 888, recognizes undoubtedly this theory, by permitting expressly the appellee, in his answer, when seasonably filed, to ask a reversal in part and a confirmation in part, as he may choose to do.

The whole judgment is therefore before us for review.

It cannot be claimed that this is a petitory action in the strict technical meaning of the term, for the plain reason that the plaintiff does not claim to be the owner of the *neutral* ground upon which the market-house was erected. The building so put up had not at the time of the institution of this suit *absolutely* formed part of the realty and passed to the city, whose rights to the ownership of it were and still are contingent upon eventualities; but the market-house, not being at all movable property, in any sense of the term, had to be considered as real property, as it really was and is. 29 An. 355. No one can bring the petitory action who cannot claim title of ownership to the thing revendicated. Possessory actions cannot be maintained for personal property. C. P. 44, 60.

The character of the suit, determined by the prayer of the petition,. is not that of a petitory action. The averments show, on the contrary,.

coupled as they are with the annexed act of derivation, that the suit is a possessory one, so far as the plaintiff is concerned. It was unnecessary for him, in order to maintain such an action, that he be the owner of the land or even of the building, which he claimed the right to *use.* "Persons entitled to the usufruct, or to the use of real estate, and others having real rights growing from such real estate, may bring their action, when disturbed in the enjoyment of their rights." C. P. 47, § 2; 60.

The purpose of such an action is to enable one having possession to maintain it. 11 An. 512. The object of the present action is not only to quiet plaintiff, but also to compel the defendant, who is charged with having slandered plaintiff's title to the use of the market-house and enjoyment of its revenues, to justify herself, if possible, by exhibition of her title.

The defamer in such a case must either deny the slander, which waives title, or admit the allegation and aver his readiness to sue. The burden is thus thrown upon the defendant to prove judicially his assertions made extra-judicially. 9 M. 714; 12 A. 873; 11 L. 188; 4 An. 53; 2 R. 331; 13 A. 235.

In response to the complaint, the defendant has admitted the slander. She has assaulted the title of plaintiff, asserting the same in herself, and claiming damages, praying reconventionally judgment in accordance with her pretensions. By her pleadings and the silence of the plaintiff the case is given unduly enlarged proportions.

It may be said, however, that this is a suit which partakes of the nature of both a possessory and a petitory action, in this, that the plaintiff claims possession and the defendant title and possession. But, after all, its character is material for the determination of the issues presented by the pleadings and the record, such as we have them before us.

It now becomes necessary to inquire into the respective pretensions of the parties litigant.

It appears from the evidence that the city of New Orleans, influenced by considerations of public good and in the exercise of the control which it claims to have over public property—has, on the 25th of April, 1875, passed, by its Council, an ordinance for the purpose of securing the construction of a market-house on a strip of ground formed by the junction or *terminus* of two streets in the Third District, offering attractive advantages to whomever would assume and complete the erection of a market, to be called Washington Market, under the specifications and terms stipulated, on behalf of the corporation. One Raymond became the contractor, and did the work, but did not, however, continue in possession of it. On the 27th February, 1875, he sold all his rights to the market-house and revenues for $150,000, (on conditions which it is

immaterial to consider) to John Lamac, who next transferred them, on the 3d of April, 1875, to John Lang, who assigned them on October 25, 1875, to Charles Lang, this plaintiff.

The act of sale by John to Charles Lang appears to have been recorded in the conveyance office of this parish on October 20, 1875. It further appears from the record that the defendant acquired similar rights to the market-house and its revenues on the 5th of September, 1876, from the New-Orleans National Bank, who were the adjudicatees of the same at a sheriff's sale, made on the 24th of July, 1876, in the suit of themselves against the same Raymond.

The only legal inquiry in a possessory action is, was the plaintiff the actual possessor, as alleged, and did the defendant disturb him ? 7 L. 415. Plaintiff need only show possession for a year and a day. 9 M. 78 ; 3 A. 342.

The record establishes such possession and such disturbance, independent of the formal admissions of the defendant. For greater certainty the plaintiff has gone so far, but unnecessarily, as to establish his title to the possession and enjoyment claimed, which is, as seen, a sale to him by his father, on the 25th of October, 1875, and which was recorded on the following day, in the conveyance office. In the body of the act, it is stated that the rights sold were acquired from John Lamac, on the 3d of April previous, by an authentic act, which was recorded in the same office on the 3d of April, 1875 ; but this statement is without effect as to third persons. The act referred to is, however, in evidence in the record.

Plaintiff's case was therefore *prima facie* made out. It remains for us to inquire now whether the defendant has justified her slander by proving title in herself to the market-house and revenues.

The title which she produces is an authentic act of sale by the New-Orleans National Bank on the 5th of September, 1876, of the rights claimed to have been acquired by it to that market-house, and to those revenues, at a sheriff's sale on the 24th July, 1876.

The consideration of the sale by Raymond to Lamac, which was $150,000, contrasts significantly with the price of adjudication at the sheriff's sale, which was $150.

In a case like this, the defendant had to make good her title. She had to establish that of her author. 15 A. 169. To do so, she offered a procès verbal signed by a deputy sheriff, only showing adjudication of said rights to the bank on said day, offered for sale in furtherance of a *fieri facias* in the suit of said bank against Joseph Raymond, No. 5938, of the docket of the Fifth District Court. 29 A. 270. The procès verbal of those rights, which apparently were real, is not shown to have been registered in the conveyance office. The writ itself and the return

on it were offered no doubt to justify the sale, adjudication, and procès verbal. The judgment in the case was also introduced. It does not show on its face *how* it was rendered. If it was on a confirmation of default, this important circumstance and the citation and return of service should have been established. If after issue joined, the answer should have been offered. We find nothing but the petition to constitute a judicial record. It was not, however, necessary to produce anterior proceedings, the rule *omnia rite acta presumuntur* applying. 6 N. S. 462 ; 9 R. 69 ; 8 A. 138 ; 13 A. 450 ; H. D. p. 586, § 9.

But be this as it may, the defendant cannot claim that she has acquired any thing from the bank, for the bank herself acquired nothing, as on the 24th of July, 1876, when it is said those rights were adjudicated to her, this had ceased to have any existence as to Raymond, the defendant in the case, who had disposed of them more than a year before, on the 27th of February, 1875, in favor of Lamac, who himself had transferred them to John Lang on the 3d of April, 1875, by whom they were on the 26th of October, 1875, assigned to the plaintiff. It has already been observed that the act of sale by John to Charles Lang of those real rights acquired from Lamac and Raymond had been recorded on the 26th October, 1875, in the conveyance office of this parish.

From this statement of facts and view of the law, it is clear that neither the bank nor Mrs. Baranco acquired those rights.

She attempted by the voluminous evidence to which reference has already been made to show simulation and fraud in the title which Charles Lang holds from his father John Lang. This endeavor could be countermanded not for the purpose of undoing plaintiff's title, but of justifying the slander of which she stood charged, which consisted not only in saying that he had no title, but that she had one.

We have seen that she has failed to show title in herself. We must say that she has likewise been unsuccessful in showing that the plaintiff has no title to the market-house and to the revenues thereof. Whether there passed a consideration or not between the plaintiff and his father, who is a man of large means, and who owes no debt, is a matter of no interest to the defendant, and of no significance for the determination of this litigation. The sale may have been a disguised donation by the father to the son, perfectly valid in law but voidable only at the proper time by forced heirs, or eventually by creditors of the vendors, asserting their complaint seasonably and alleging and proving injury.

As subrogee to the rights of the bank the defendant might perhaps, after making proper parties in proper proceedings, averring rights anterior to the transfer by Raymond to Lamac, and fraud and injury, have had a right to bring a revocatory action, but it would have had to be done within the year following the commission of the fraud or act done.

Lange vs. Baranco.

The sale by Raymond to Lamac was made on 27th February, 1875, and the reconventional demands of the defendant, in which she charges fraud and simulation, were filed on November 22, 1876, and June 27, 1877.

On the whole, we consider that plaintiff's case is made out, and that he is entitled to be quieted in the enjoyment of the market-house, and of its revenues, and to recover damages from the defendant for the slander of which she is proved to have been guilty, and which may be reasonably estimated at three hundred dollars.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed, and, proceeding to render such judgment as should have been rendered,

It is ordered, adjudged, and decreed that the injunction herein issued be perpetuated, and that plaintiff recover of the defendant the sum of three hundred dollars, and that the reconventional demands of the defendant be rejected with judgment therein in favor of plaintiff, Charles Lang, and that the defendant, Mrs. Baranco, pay all costs of suit in both courts.

Mr. Justice FENNER takes no part in this decision.

## ON REHEARING.

A review of the evidence satisfies us that the defendant was not actuated by malice in slandering plaintiff's title sufficiently intense to justify the infliction of the damages allowed and which were considered light. She came up with a judgment justifying her course, a circumstance which militates successfully in her favor. After considering the matter anew, we think that the payment of the costs of this litigation, which apparently are reasonably heavy, will prove a sufficient atonement for the slander.

It is therefore ordered that our previous judgment be amended by striking therefrom the words "and that plaintiff recover of the defendant the sum of three hundred dollars" and from the opinion the reasons conducive to that portion of the decree, and that thus amended the said judgment remain otherwise undisturbed and be executed.