311 So.2d 503 (1975)
POWERS REGULATOR COMPANY
v.
MURPHY'S PLUMBING SERVICE, INC., et al.
No. 6752.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 1975.
*504 Dodge & Friend, Joseph E. Friend, New Orleans, for plaintiff-appellee.
Hammett, Leake & Hammett, John I. Hulse, IV, New Orleans, for defendants-appellants.
Before GULOTTA, MORIAL and BEER, JJ.
BEER, Judge.
This interesting, well briefed and well argued case turns upon a judicial interpretation of the emphasized portion of LSA-R.S. 38:2247 which states:
"Nothing in this Part shall be construed to deprive any person or claimant within the terms of this Part of his right of action on the contractor's bond which shall accrue at any time after maturity of his claim, which said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor; except that before any person having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall record his claim as provided in R.S. 38:2242 or give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana."

There is no doubt about the fact that plaintiff-appellee Powers Regulator Company (hereafter, Powers) did, within the time required, properly mail an appropriate claim to defendant-appellant Charles L. Branch (hereafter, Branch) at an address which met the requirements of the statute. However, the certified mail letter of notification of the claim was never delivered *505 to Branch by the Post Office Department. Delivery was attempted although there is an unresolved factual dispute regarding the receipt by Branch of the notification from the Post Office Department that an unsuccessful delivery attempt had been made. The certified mail letter of notification was not called for by Branch, and subsequently, as is the Post Office Department practice, it was returned to the sender, Powers. This all occurred in early May, 1971 well in advance of the expiration of the statutory time limit for filing a lien.[*] Powers took no further action to protect its lien rights within the 45 day time period prescribed by the statute.
Do these steps constitute the "notice" required by LSA-R.S. 38:2247? We think not.
We have often found it necessary to state that statutes dealing with lien matters must be strictly construed:
"It is well established that statutes relaing to liens shall be strictly construed requiring rigid interpretation and that the privileges therein conferred shall not be extended or enlarged either by implication or the application of equitable considerations. Pringle Associate Mortgage Corporation v. Eanes, 208 So.2d 346 (La.App.1st Cir. 1968), writ issued 252 La. 267, 210 So.2d 508; Security Homestead Association v. Schnell, 232 So.2d 898 (La.App.4th Cir. 1970); McGill Corp. v. Dolese Concrete Company, 201 So.2d 125 (La.App.1st Cir. 1967), rehearing denied June 30, 1967."
Executive House Building, Inc. v. Demarest, 248 So.2d 405, 409 (La.App.4th Cir. 1971). Although Powers complied with the portion of the statute which described the method by which notice was to be mailed to Branch, it is patently apparent that the notice was not received by Branch and, most important, that Powers knew of the non-delivery of the notice yet took no further timely action to accomplish delivery even though sufficient time remained available.
Equitable considerations aside, we hold that "notice" can not be presumed in the face of clear compelling contrary indication. Had the statute specifically stated that the mere fulfillment of its mailing provisions constituted conclusive notice, subsequent check list fulfillment of the method of notification would require such a conclusion as a matter of law. Otherwise, check list fulfillment results only in presumptive notice which is rebuttable and can be explained or contradicted. Broadway v. All-Star Ins. Corp., La., 285 So.2d 536 (1973); Skipper v. Federal Insurance Company, 238 La. 779, 116 So.2d 520 (1959).
Here the presumptive notice was quite emphatically contradicted by actual knowledge of non-delivery. The stipulation of facts acknowledges that the notification letter was sent "Certified Mail, Return Receipt Requested" so that, in addition to knowing of the non-delivery by reason of the return of the undelivered certified mail letter of notification, Powers also knew of the non-delivery by reason of its non-receipt of the "Return Receipt." Furthermore, Powers had ample time, after this knowledge, to protect its lien rights but did not do so.
Since we find that notice of the claim was not given to appellant within the statutory time period, we must reverse the judgment of the District Court. Accordingly, there will be judgment herein dismissing plaintiff-appellee's suit at its cost.
Reversed and rendered.
NOTES
[*] The acceptance was filed on April 29, 1971 making June 14, 1971 the last day of the lien period.